UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

UNITED STATES OF AMERICA,

       - against -                02-cr-395 (JGK)

AHMED ABDEL SATTAR             OPINION AND ORDER

               Defendant.
────────────────────────────────

JOHN G. KOELTL, District Judge:

    Following a nine-month jury trial, the defendant, Ahmed
Abdel Sattar, was found guilty of terrorism-related crimes,
namely solicitation of crimes of violence in violation of 18
U.S.C. § 373, conspiracy to kill persons in a foreign country in
violation of 18 U.S.C. § 956, and conspiracy to defraud the
United States in violation of 18 U.S.C. § 371. At Sentencing on
October 16, 2006, Sattar faced an advisory Guidelines sentence
of life imprisonment, but the Court sentenced Sattar principally
to 288 months' imprisonment. Sattar, who is currently
incarcerated at Federal Correctional Institution Schuylkill ("FCI-
Schuylkill") is scheduled to be released on September 20, 2022.
Sattar now moves for compassionate release under 18 U.S.C.
§ 3582(c)(1)(A)(i) in light of the COVID-19 outbreak, the
defendant's medical condition and the defendant's age. For the
reasons that follow, the application for compassionate release
is **denied**.

**I.**

As amended by Section 603(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), 18 U.S.C. § 3582(c) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that
>
> (1) in any case –
>
>> (A) The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

When deciding a motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the threshold question is whether the defendant has shown that "extraordinary and compelling reasons" exist to reduce the defendant's sentence. The relevant policy statement promulgated by the Sentencing Commission provides that

2

a reduced sentence for "extraordinary and compelling reasons"
may be based on the defendant's medical condition where the
defendant is "suffering from a terminal illness" or where the
defendant is "suffering from a serious physical or medical
condition . . . that substantially diminishes the ability of the
defendant to provide self-care within the environment of a
correctional facility and from which he or she is not expected
to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). In addition,
"extraordinary and compelling reasons" exist when "[a]s
determined by the Director of the Bureau of Prisons, there
exists in the defendant's case an extraordinary and compelling
reason other than, or in combination with the reasons described
in subdivisions (A) through (C) [of the policy statement]." Id.
§ 1B1.13 cmt. n.1(D).

    If "extraordinary and compelling reasons" exist, the court
must then assure itself that a reduced sentence would be
consistent with the factors set out in 18 U.S.C. § 3553(a). See
United States v. Lisi, -- F. Supp. 3d --, 2020 WL 881994, at *5
(S.D.N.Y. Feb. 24, 2020). Finally, the policy statement requires
the court to determined that the defendant is not a danger to
the safety of any other person or to the community, as provided

in 18 U.S.C. § 3142(g)" before the court may reduce the
defendant's sentence. U.S.S.G. § 1B1.13(2).[1]

## II.

In this case, the defendant has failed to establish that
"extraordinary and compelling reasons" exist that warrant an
immediate termination of the defendant's term of imprisonment.
The defendant argues that "extraordinary and compelling reasons"
exist based on a combination of his age of 60 and his medical
conditions, namely high blood pressure, atrial fibrillation, and
a thyroid condition.

The defendant argues that Application Note 1(D), the so-
called "catch-all" provision of the relevant policy statement,
U.S.S.G. § 1B1.13, provides a basis for relief. As several
courts within this district have noted, "[w]hile the Policy
statement pre-dates the First Step Act's procedural changes, the
amendments to the compassionate release statute grant this Court
the same discretion as that previously given to the BOP
Director, and therefore the Court may independently evaluate

---

[1] A defendant must also comply with the procedural exhaustion requirement.
There is no question in this case that the defendant has complied with the
exhaustion requirement set out 18 U.S.C. § 3582(c)(1)(A). On April 6, 2020,
Sattar submitted a request for compassionate release to the warden of FCI-
Schuylkill. ECF No. 1085-2. Sattar's request was received on April 15, 2020
and on May 13, 2020 the request was denied principally on the ground that
Sattar's "medical history does not meet the criteria" for compassionate
relief because Sattar is "currently able to independently adapt to activities
of daily living and [is] able to perform self-maintenance activities in a
correctional environment." ECF No. 1087-1. Because more than 30 days have
elapsed after Sattar made his request to the warden, he has exhausted his
administrative remedies and this motion is properly before the Court.

whether a defendant has raised an extraordinary and compelling reason for compassionate release under the 'catch-all' provision." United States v. Olszewski, No. 15-cr-364, 2020 WL 2420483, at *2 (S.D.N.Y. May 12, 2020) (alterations and quotation marks omitted) (collecting cases). The description of "extraordinary and compelling reasons" set out in U.S.S.G. § 1B1.13 provides "helpful guidance for considering motions for compassionate release." Id. In this case, although the defendant cites the "catch-all" provision of the policy statement as a basis for compassionate release, his application for release is based primarily on his medical conditions and his age in combination with the risk posed to him by COVID-19, and he makes no separate argument under the "catch-all" provision.

The defendant's age of 60 is not, in and of itself, an extraordinary and compelling reason within the meaning of the First Step Act. The defendant's age of 60 does not place the defendant into a particularly vulnerable category for the COVID-19 virus. See United States v. Haney, -- F. Supp. 3d  --, 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020) ("But if [the defendant's age alone were a sufficient factor to grant compassionate release in these circumstances, it follows that every federal inmate in the country above the age of 60 should be released from detention, a result that does not remotely comply with the limited scope of compassionate release

5

. . . .”); <u>People Who are at Higher Risk for Severe Illness</u>,
Centers for Disease Control and Prevention (June 14, 2020),
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/people-at-higher-risk.html (noting that people 65
years and older are at high-risk for severe illness from COVID-
19).

Moreover, the defendant's proffered medical conditions do
not make him particularly vulnerable to the COVID-19 virus and
his medical conditions are not so severe that they
"substantially diminish[] the ability of the defendant to
provide self-care within the environment of [FCI-Schuylkill] and
from which [the defendant] is not expected to recover." U.S.S.G.
§ 1B1.13 cmt. n.1(A).

The defendant first points to his high blood pressure as a
basis for compassionate release. Although the data are still
being analyzed for links between high blood pressure and an
increased risk for COVID-19, at this point, the Centers for
Disease Control guidance suggests that pulmonary hypertension,
which Sattar does not claim to suffer from, is a genuine risk
factor, and the guidance does not suggest that regular
hypertension, which Sattar does claim to suffer from, is a risk
factor. <u>See</u> <u>People Who are at Higher Risk for Severe Illness</u>,
Centers for Disease Control and Prevention; <u>United States v.
Hull</u>, No. 17-cr-132, 2020 WL 2475639, at *2-3 (D. Conn. May 13,

2020) (finding, based on CDC guidance about the link between COVID-19 and high blood pressure, that the defendant's age of 63 coupled with his high blood pressure, did not constitute a basis for compassionate release). Moreover, Sattar's high blood pressure is relatively mild and is under control at FCI-Schuylkill. He has experienced only intermittent bouts of high blood pressure, most recently in November 2019, and before that in October 2016. Sattar's blood pressure is regularly tested by medical staff. Based on medical records submitted by the BOP, Sattar's average blood pressure over the last decade has been below the cutoff for hypertension. When Sattar has had bouts of high blood pressure, there is no indication that BOP medical staff has been deficient in treating it. To the extent that Sattar suffers from high blood pressure, Sattar has failed to offer any evidence that the medical staff at FCI-Schuylkill, in particular, or at BOP, in general, is unable to manage Sattar's high blood pressure.

Sattar also points to two chronic conditions, thyroid disease and atrial fibrillation as bases for compassionate release. Neither of these conditions is included in the list of CDC diseases that make an individual at high risk for severe illness if that individual contracts COVID-19. See People Who are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention. Sattar has also failed to provide any

evidence that these conditions, to the extent they continue to affect Sattar, are unable to be treated at FCI-Schuylkill.

Sattar has therefore failed to establish that his high blood pressure, atrial fibrillation, and thyroid disease provide bases for compassionate release because they do place the defendant at increased risk for severe illness were he to contract COVID-19 and the defendant has failed to show that the conditions either have been or are incapable of being treated at FCI-Schuylkill.

For the first time in his reply brief, the defendant points to his latent tuberculosis and high cholesterol as bases for compassionate release based on high heightened susceptibility to severe illness if he contracts COVID-19. As an initial matter, Sattar has waived his right to rely on these conditions as bases for his compassionate release motion because Sattar raised them for the first time in his reply brief. See Melo v. United States, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011). In any event, these conditions do not amount to "extraordinary and compelling reasons" warranting immediate release. Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, Sattar has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at FCI-Schuylkill. Similarly, although high cholesterol can be a risk factor for severe illness

resulting from COVID-19 in some situations, the defendant has failed to show that his high cholesterol is a serious problem, that it has not been controlled at FCI-Schuylkill, or that medical staff would be unable to treat it if it became more serious. Therefore, neither Sattar's latent tuberculosis nor his high cholesterol are bases for compassionate release.

Finally, Sattar has not pointed to anything in particular about FCI-Schuylkill that puts him at increased risk for contracting COVID-19 at that facility. Sattar does not allege that FCI-Schuylkill is particularly ill-suited to containing a COVID-19 outbreak or that it is a particularly vulnerable institution. In fact, FCI-Schuylkill appears not to have had any confirmed cases of COVID-19 among either staff or inmates. Although asymptomatic cases are possible, and there is no evidence of widespread testing at FCI-Schuylkill, it is significant that there have been no reported symptomatic cases. Sattar's application thus amounts to mere speculation that there might be a COVID-19 outbreak at FCI-Schuylkill and that if there is such an outbreak FCI-Schuylkill would be incapable of handling the outbreak. This kind of speculation is not a basis for compassionate release. See United States v. Hidalgo, -- F. Supp. 3d --, 2020 WL 2642133, at *4 (S.D.N.Y. May 26, 2020); United States v. Lap Seng, No. 15-cr-706, 2020 WL 2301202, at *9 (S.D.N.Y. May 8, 2020) ("[T}he blanket claim that the structure

of BOP institutions and BOP's programming are conducive to the spread of COVID-19 assumes that the spread of COVID-19 cannot be mitigated with the implementation of BOP's action plan. [The defendant] does not provide support for this assertion and it is at beast speculation that borders on hyperbole.").

The defendant has therefore failed to demonstrate that there are "extraordinary and compelling reasons" that warrant a reduced sentence. On that basis alone, the defendant's application is denied. See United States v. Skelos, No. 15-cr-317, 2020 WL 2508739, at *3 (S.D.N.Y. May 15, 2020) ("Because the Court finds there are no extraordinary and compelling reasons warranting compassionate release in this case, the Court need not consider the sentencing factors set forth in 18 U.S.C. § 3553(a), or Defendant's potential dangerousness.").

**III.**

In any event, application of the sentencing factors in 18 U.S.C. § 3553(a) to the facts of this case also weighs strongly against immediate release.

Sattar's offense conduct was extraordinarily serious. Sattar was originally convicted for terrorism-related offenses involving circumventing measures intended to prevent Sheik Abdul Ahmed Rahman from promoting violence by the Islamic Group in Egypt and for participating in drafting a fatwah urging the killing of Jews. The offense conduct would likely have led to

10

the loss of life had it not been interdicted by foreign law
enforcement authorities.

The Sentencing Guidelines recommended a sentence of life
imprisonment based in part on the Court's determination that the
terrorism enhancement, U.S.S.G. § 3A1.4, applied. The Court
carefully considered all of the relevant sentencing factors and
concluded that a below-Guidelines sentence of 24 years (288
months) was the sentence that was sufficient but no greater than
necessary to comply with the purposes of sentencing, including
to reflect the seriousness of the offense, the need for
deterrence, and the protection of the public. See United States
v. Stewart, 590 F.3d 93, 142-44 (2d Cir. 2009) (reviewing and
affirming Sattar's sentence). These crimes warranted a
substantial sentence for purposes of deterrence and protection
of the public. The Court carefully considered all of the various
interests and factors in 18 U.S.C. § 3553(a) and nothing in the
defendant's current papers causes the Court to recalculate the
minimal sentence that is necessary to comply with those
purposes. All of the factors that led the Court to impose a
sentence of 288 months continue to be true today.

In his application, the defendant points to a number of
factors that he argues support immediate release under 18 U.S.C.
§ 3553(a). Two of these factors, the defendant's
characteristics, including his chronic medical conditions, and

11

the defendant's family situation including his wife and his four children, were known to the Court at sentencing. The Court already accounted for these factors, to the extent that they were relevant, when it determined that a sentence of 288 months' imprisonment was sufficient but no greater than necessary to achieve the goals of sentencing as set out in 18 U.S.C. § 3553(a). Nothing in the current papers causes the Court to change its assessment of those factors.

The defendant also points to the fact that he has already served 18 years' imprisonment, over 80% of his sentence, as a reason for immediate release. However, the Court's assessment that 288 months' imprisonment was the minimum sentence that was sufficient but no greater than necessary to serve the goals of sentencing, particularly in this case to reflect the seriousness of the offense and the need for deterrence and protection of the public, has not changed. The remaining approximately 20% of the defendant's term of imprisonment is simply the final portion of the sentence that the Court determined was sufficient but not greater than necessary to achieve the goals of sentencing.

Sattar also remains a risk to the community within the meaning of 18 U.S.C. § 3142(g) for substantially the same reasons that the sentencing factors in 18 U.S.C. § 3553(a) weigh against immediate release in order to reflect the seriousness of the offense conduct.

12

Thus, in addition to the defendant's failure to demonstrate "extraordinary and compelling reasons" warranting a reduced sentence, application of the factors set out in 18 U.S.C. § 3553(a) and the defendant's continued dangerousness as set out in 18 U.S.C. § 3142(g) also do not favor a reduced sentence.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. The defendant's application for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **denied**.

**SO ORDERED.**

Dated:   New York, New York
         June 16, 2020          _____/s/ John G. Koeltl____
                                       John G. Koeltl
                                United States District Judge